

# IN THE
# TENTH COURT OF APPEALS

No. 10-11-00395-CR
No. 10-11-00396-CR
No. 10-11-00397-CR

## EX PARTE DAVID LEWIS SMITH JR.,

**From the 13th District Court**
**Navarro County, Texas**
**Trial Court No. 11-20473-CV, No. 11-20474-CV and 11-20475-CV**

## MEMORANDUM OPINION

Applicant, David Lewis Smith Jr., is charged with one count of intentionally or knowingly causing serious bodily injury to a disabled person, a first-degree felony, in three different cause numbers. *See* TEX. PENAL CODE ANN. § 22.04(a)(1), (e) (West Supp. 2011). The trial court set bail at $500,000 in each cause for a cumulative bail amount of $1.5 million. Applicant filed an application for a writ of habeas corpus, seeking a reduction in bail, which the trial court denied. In one issue, applicant argues that, based on article 17.15 of the code of criminal procedure, the trial court abused its discretion in failing to reduce his bail in the three causes. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005). We affirm.

# I. BACKGROUND

According to Detective Jessica Abbe of the Corsicana Police Department, at the time of the incident, applicant worked for American Rehabilitation Services at a "welfare home for disabled or mentally challenged individuals" in Corsicana, Texas. While working at the welfare home, applicant allegedly "poured hot grease on three separate disabled persons at separate times." In her testimony, Detective Abbe noted that applicant "provided a written confession to Adult Protective Services for burning the three individuals, not just one." She further testified that the disabled individuals sustained severe burns on several parts of their bodies as a result of applicant's actions and that, because of their disabilities, the individuals are unable to speak about the incident. Detective Abbe concluded that, based on her investigation, applicant did not accidentally burn the disabled individuals. She recalled that applicant first told his employer that the burns on the disabled individuals were due to small carpet burns; however, applicant later changed his story. Detective Abbe testified that she believes that applicant would engage in these actions again and that applicant's bail should not be lowered because he is a danger to the community. On cross-examination, however, Detective Abbe stated that applicant does not have a violent criminal history.

Applicant called several family members to testify on his behalf. Each testified that they are a close-knit family and would assist applicant financially and ensure that he attends all court hearings. The family members also testified that, when pooling their money together, they could not afford to pay the bail amount and that applicant had a normal childhood and did not engage in violent behaviors.

At the conclusion of the hearing on applicant's application, the trial court denied applicant's application seeking a reduction in bail and later entered the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. David Lewis Smith, Jr. (hereinafter "Defendant") is charged with three cases of Injury to a Disabled Person where bond is set on each case at $500,000.00.

2. Each case filed is a First Degree Felony which carries a range of punishment of up to Life in prison.

3. Defendant is a 2005 graduate of Corsicana High School.

4. Defendant's family, with the exception of a brother, currently lives in Corsicana, Texas.

5. Defendant has no prior criminal history.

6. Defendant has no assets.

7. Defendant was employed working with disabled and mentally handicapped persons at the time of his arrest but is no longer employed in that capacity due to his incarceration.

8. Defendant and his family have been unable to raise funds to make the premium payments on the current bonds to local sureties.

9. If released, Defendant would potentially be in the presence of children.

10. Defendant confessed to burning three handicapped individuals.

11. The three alleged victims were transported to Parkland Hospital's Burn Unit for medical treatment.

12. The three alleged victims are unable to speak.

CONCLUSIONS OF LAW

1. The bail set in each case is not oppressive.

2. The bail set in each case i[s] to protect not just the alleged victims but also the community as a whole.

3. Considering the five factors listed in Article 17.15 of the Code of Criminal Procedure as well as factors enumerated in case law, the Court did not abuse its discretion in denying the Defendant's Applications for Writ of Habeas Corpus Seeking Bail Reduction.

4. The Defendant's relief requested should be denied; bond should remain on each case at $500,000.00.

## II. STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's decision regarding bail settings for an abuse of discretion. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981); *see Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When reviewing a trial court's decision, we will not disturb that ruling as long as it is "at least within the zone of reasonable disagreement." *Cooley v. State*, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "But an abuse of discretion review requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made." *Id.*

In exercising its discretion, the trial court should consider the following statutory rules in setting a defendant's bail:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of the victim of the alleged offense and the community shall be considered.

TEX. CODE CRIM. PROC. ANN. art. 17.15; *see Golden v. State*, 288 S.W.3d 516, 518 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The burden of proof is upon the defendant to demonstrate that the set bail amount is excessive. *Golden*, 288 S.W.3d at 518.

In addition to the statutory factors listed in article 17.15, we also consider the defendant's work record, family ties, length of residency, past criminal record, conformity with previous bond conditions, other outstanding bonds, and aggravating factors involved in the offense. *Id.* at 519 (citing *Ex parte Rubac*, 611 S.W.2d at 849-50).

## III. ANALYSIS

On appeal, applicant contends that his bail is oppressive and should be reduced because his family members can only raise $25,000 in funds; he has no criminal record; he has ties to the community; he is not a flight risk; and he has a place to live—with his mother and father—if released.

### A. Nature of the Offenses

The defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd); *see Ex parte Vasquez*, 558 S.W.2d 477, 479-80 (Tex. Crim. App. 1977). When the nature of the offense is serious and aggravating factors are involved, "a

lengthy prison sentence following trial is probable." *Ex parte Scott*, 122 S.W.3d 866, 869 (Tex. App.—Fort Worth 2003, no pet.). "Pretrial bond in these kinds of cases should be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear." *Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *see Ex parte Hunt*, 138 S.W.3d at 506 ("Given the serious nature of the offenses and the potential for a lengthy sentence, the trial court could properly have concluded that the amounts of the bonds were reasonable.").

In this case, the State has charged applicant with three separate cases of intentionally and knowingly causing serious bodily injury to a disabled person, a first-degree felony, which carries a punishment range of confinement for five to ninety-nine years, or life, plus a fine of up to $10,000. *See* TEX. PENAL CODE ANN. §§ 12.32 (West 2011), 22.04(a)(1), (e). Therefore, if convicted in each cause number, applicant faces the possibility of three life sentences. *See id.* § 12.32. Given the serious and egregious nature of applicant's alleged offenses and the potential for lengthy sentences if convicted, the trial court could have properly concluded that applicant's bail was reasonable. *See Golden*, 288 S.W.3d at 518; *see also Ex parte Scott*, 122 S.W.3d at 870.

**B. Sufficient Bail to Assure Appearance but Not Oppress**

A trial court should set bail sufficiently high to provide reasonable assurance that the defendant will appear at trial. *Montalvo*, 315 S.W.3d at 593. "A defendant's ties to the community and work history bear on the adequacy of bail to give reasonable assurance he will appear." *Richardson v. State*, 181 S.W.3d 756, 759 (Tex. App.—Waco

2005, no pet.). We also consider whether the record reflects that the trial court made its decision regarding the bail amount "for the purpose of forcing [applicant] to remain incarcerated pending trial." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (noting that the trial judge stated, "I'd rather see him in jail than to see someone's life taken . . .")); *see Richardson*, 181 S.W.3d at 759 ("Bail set in a particular amount becomes oppressive when it is based on the assumption that [the accused cannot] afford bail in that amount and for the express purpose of forcing [the accused] to remain incarcerated pending [trial]." (internal quotations & citations omitted)). The record here contains no indication that the trial court set the bail amounts for the sole purpose of keeping applicant incarcerated pending trial. *See Montalvo*, 315 S.W.3d at 596 ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Montalvo from posting bail.").

As noted above, applicant presented evidence that all of his family lives in Corsicana, except for his brother who lives in Dallas, Texas. Applicant's family testified that they have lived in Corsicana for many years. Applicant's mother informed the trial court that applicant was living in her home at the time of his arrest and that, if he was released on bail, he could return to her home. Applicant testified that he has had several jobs since graduating from high school in 2005; however, because of this incident, he was terminated from American Rehabilitation Services and, thus, has no job. Based on our review of the record, we conclude that applicant has presented

evidence of family and community ties to the area, which weighs in favor of a reduction of the bail amount.

**C. Ability to Make Bail**

Generally, to show that he cannot make bail, a defendant must demonstrate that his funds and his family's funds have been exhausted. *See Milner*, 263 S.W.3d at 149. Unless he has shown that his funds and his family's funds have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Id.* If, however, both the defendant and his family indicate a financial inability to procure a bond, the court will not require him "to do a useless thing." *Id.* at 149-50 (quoting *Ex parte Duiett*, 529 S.W.2d 531, 532-33 (Tex. Crim. App. 1975)).

"[T]he ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent." *Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Clark*, 537 S.W.2d 40, 42 (Tex. Crim. App. 1976). If the defendant's ability to make bail in a specific amount controlled, "the role of the trial court in setting [bail] would be completely eliminated and the accused would be in the position to determine what his [bail] should be." *Milner*, 263 S.W.3d at 150; *see Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd). When considering an applicant's ability to make bail, we are not limited to looking solely to the defendant's financial resources; rather, we may also consider his family's resources and ability to post security. *See Milner*, 263 S.W.3d at 150 (considering, in addition to

defendant's financial resources, those of his mother); *see also Montalvo*, 315 S.W.3d at 595 ("No evidence was presented about any discussions with bondsmen or the maximum amount of bail that Montalvo believed he could satisfy. Similarly, no evidence was presented about whether Montalvo's family had any ability to help him make bail.").

Here, applicant's family testified that they did not have the resources to pay the bail amount imposed by the trial court. Several family members testified that they could contribute several thousand dollars to help pay for applicant's bail amount. Applicant's mother stated that she contacted three different bondsmen and that the cheapest bond premium quoted was $150,000, based on the $1.5 million bail imposed. When asked about property that could be sold to pay the bond premium, applicant's mother testified that she owns her home, which appraises for approximately $70,000; however, she acknowledged that she only had about $10,000 in equity in the house. Applicant stated that he is not employed and that he does not have any resources that he could use to pay the bail amount. None of applicant's family members noted that they have exhausted any funds in an attempt to make bail. Based on the testimony adduced at the hearing on applicant's habeas corpus application, it could be concluded that this factor weighs in favor of reducing applicant's bail amount. However, we must note that, despite such a conclusion, "this element would not control over all other considerations." *Milner*, 263 S.W.3d at 150; *see Richardson*, 181 S.W.3d at 760 ("Although a defendant's ability to make bail is a factor for consideration, inability to make bail, even to the point of indigence, does not control over the other factors.").

**D. Future Safety of Victim and Community**

Article 17.15 dictates that we must also consider "[t]he future safety of a victim of the alleged offenses and the community" when reviewing the trial court's bail determination. TEX. CODE CRIM. PROC. ANN. art. 17.15(5). Several members of applicant's family stated that he is not a violent person and that he does not have a criminal record, though most of the family members testified that they were unaware of the egregiousness of the crimes of which applicant is accused. Nevertheless, Detective Abbe stated that, based on her investigation of the incident and applicant's background, she believes that applicant would engage in these actions again and that applicant's bail should not be lowered because he is a danger to the community. In addition, the trial court, in its findings of fact and conclusions of law, stated that: (1) "If released, Defendant would potentially be in the presence of children"; and (2) "The bail in each case i[s] to protect not just the alleged victims but also the community as a whole." In considering the record, we conclude that the evidence supports the trial court's finding that the present bail amount is appropriate to protect the alleged victims and the community. *See id.*; *see also Milner*, 263 S.W.3d at 150.

After considering the factors of article 17.15 and the record before us, we cannot conclude that the bail amounts set by the trial court are constitutionally or statutorily excessive. *See* U.S. CONST. amend. VIII; TEX. CODE CRIM. PROC. ANN. art. 17.15; *see also Golden*, 288 S.W.3d at 518. We therefore hold that the trial court did not abuse its discretion in setting applicant's bail at a total of $1.5 million for the three charged

offenses.  *See Ex parte Rubac*, 611 S.W.2d at 849; *see also Montalvo*, 315 S.W.3d at 592.

Applicant's sole issue is overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed February 15, 2012
[CR25]